**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DONTA MCMILLAN, | : : : | Case No. 3:18-cv-13379 (BRM) |
| Plaintiff, | : : |  |
| v. | : : | **OPINION** |
| COMM'R OF THE N.J. DEP'T OF CORR., et al., | : : : : |  |
| Defendants. | : : |  |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendants Virlyn Toure, Carol Milroy and Xiaomei Chen (collectively, "Medical Defendants") seeking to dismiss Plaintiff Donta McMillan's ("Plaintiff") claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 44.) Plaintiff filed an Opposition to Defendants' Motion (ECF No. 47) and the Medical Defendants filed a Reply (ECF No. 49). Having reviewed the parties' submissions filed in connection with the Motion and, having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, and for good cause shown, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

**I. BACKGROUND**[1]

Plaintiff, at all times relevant, was a convicted and sentenced state prisoner housed by the New Jersey Department of Corrections at the Albert C. Wagner Youth Correctional Facility

---

[1] For the purposes of this Motion to Dismiss, the Court accepts as true all factual allegations in the Complaint and draws all inferences in the facts alleged in the light most favorable to the Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

("WYCF") in Bordentown, New Jersey or New Jersey State Prison ("NJSP") in Trenton, New Jersey. (Compl. (ECF No. 1) ¶ 4.) On September 10, 2016, a corrections officer at WYCF was assaulted by another inmate, and the prison went on lockdown for two and a half days. (*Id.* ¶ 15.) On September 13, 2016, Corrections Officer Young took Plaintiff from his cell and directed him to retrieve paper and water from the "dugout," even though the only inmates allowed out of their cell during the lockout were kitchen workers and barbers. (*Id.*)

As Plaintiff was coming upstairs holding the canister of hot water, Defendant M. Cirulli, a corrections officer, without provocation, attacked Plaintiff. (*Id.* ¶ 16.) Several other corrections officers joined in and "repeatedly and viciously punched, kicked, and beat plaintiff until he could no longer walk and was unconscious." (*Id.* ¶ 17.) Defendant Officers took Plaintiff to a holding cell and, during the escort, it was readily apparent Plaintiff could not walk. (*Id.* ¶ 20.) Once he regained consciousness, he complained of pain to his ribs, difficulty breathing and the inability to walk. (*Id.*) Defendant Nurse Virlyn Toure looked at Plaintiff inside the holding cell, claiming to observe only a laceration to his right upper eyebrow. (*Id.* ¶ 21.) At that time, Plaintiff complained of pain to both of his ribs, difficulty breathing, inability to walk, and move his left foot. (*Id.*) Plaintiff's entire face was bloody with lacerations due to the severe beating he received from the Defendant officers. (*Id.*) Defendant Toure did not administer immediate medical treatment to Plaintiff, but notified Defendant Xiaomei Chen who ordered, via telephone, Plaintiff be transported to the infirmary for examination and treatment. (*Id.*)

Without Plaintiff being seen by a doctor or receiving any medical treatment or evaluation, Defendant Toure cleared Plaintiff to be transported to NJSP. (*Id.* ¶ 22.) Upon arrival at NJSP, Plaintiff again was not taken to the infirmary, but placed in solitary confinement and provided with only a foam mattress inside of his cell. (*Id.* ¶ 23.) Despite his complaints to Defendant Carol

2

Milroy, RN that he could not breathe, he believed his ribs were broken, he could not walk, and he was in great pain, Plaintiff received no medical treatment whatsoever. (*Id.*) Moreover, Defendant Milroy "minimized Plaintiff's medical condition and otherwise falsified her report even though she knew he suffered from asthma and was complaining that he could not breathe, and that his ribs were fractured." (*Id.*) According to Nurse Milroy's medical report, Plaintiff informed her he had an altercation with officers after they told him to leave Mental Health pertaining to his medications and adjustments. (*Id.* ¶ 24.) Plaintiff never had a mental health history and never informed Nurse Milroy he had spoken to them on the day of the incident. (*Id.*) Defendant Dr. Xiaomei Chen, via telephone, indicated Plaintiff would be evaluated the following morning, but no one ever evaluated Plaintiff for his injuries, and he remained in solitary confinement for approximately three months before he was transferred to administrative segregation for 365 days. (*Id.*)

On February 15, 2019, the Medical Defendants filed the present Motion to Dismiss. (ECF No. 44.) They raise the following grounds: (1) Plaintiff's claims under the Fourteenth Amendment should be dismissed because he was a convicted and sentenced prisoner at the time of the alleged incidents; (2) Plaintiff fails to state a claim under the Eighth Amendment; (3) the New Jersey Civil Rights Act claims should be dismissed for the same reasons as the § 1983 claims; (4) Plaintiff's infliction of emotional distress claim must be dismissed because he failed to file a Notice of Tort Claim. (*Id.*)

**II. LEGAL STANDARD**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations

3

omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint.'" *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

## III. DECISION

### A. § 1983 and NJCRA Claims[2]

#### 1. Fourteenth Amendment

A prisoner's Eighth Amendment right to be free of cruel and unusual punishment is violated where prison officials are deliberately indifferent to the plaintiff's serious medical needs. *King v. Cty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243-44 (1983)); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment's protections, however, apply only after a prisoner has been sentenced and convicted. *King*, 302 F. App'x at 96; *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005). Where a prisoner has not yet been convicted, the Fourteenth Amendment applies. *King*, 302 F. App'x at 96.

At the time of the incidents in the Complaint, it is undisputed Plaintiff was a convicted and sentence state prisoner. (ECF No. 1 ¶ 4.) Therefore, to the extent Plaintiff intended to raise a denial

---

[2] The same analysis used for the § 1983 claims applies to the NJCRA claims. *See Estate of Martin v. U.S. Marshals Serv. Agents*, 649 F. App'x 239, 245 n.4 (3d Cir. 2016) ("[I]t appears undisputed that [p]laintiffs' claims under the New Jersey Constitution and the New Jersey Civil Rights Act trigger the same legal elements and principles as . . . [the] federal causes of action [under Section 1983].").

5

of medical care claim under the Fourteenth Amendment, such a claim is dismissed. As a convicted and sentenced prisoner, the Eighth Amendment governs his denial of medical care claim. *Id.*; *City of Revere*, 463 U.S. at 243–44 ("The *Eighth* Amendment's proscription of cruel and unusual punishments is violated by 'deliberate indifference to serious medical needs of prisoners.'" (quoting *Estelle*, 429 U.S. at 104 (emphasis added))).

### 2. Eighth Amendment

The Eighth Amendment prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981). This proscription against cruel and unusual punishment requires prison officials to provide inmates with adequate medical care. *Estelle*, 429 U.S. at 103–04. In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106.

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate his medical needs are serious. Serious medical needs include those that have been diagnosed by a physician as requiring treatment or are so obvious a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the *Estelle* test requires an inmate to show prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference.

*Andrews v. Camden Cty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotations and citations omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–06; *White*, 897 F.2d at 110.

> Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest. Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met.... Finally, deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment.

*Monmouth Cty. Corr. Inst. Inmates*, 834 F.2d at 346 (citations omitted). "[I]f necessary medical treatment [i]s . . . delayed for non-medical reasons, a case of deliberate indifference has been made out." *Id.*

With regard to Defendant Toure, a nurse at WYCF, Plaintiff alleges she observed him in the holding cell immediately after the incident and, despite his bleeding head and complaints of pain to both of his ribs, difficulty breathing, inability to walk or move his left foot, she did not administer medical treatment to him. (ECF No. 1 ¶ 21.) Instead, she spoke to Dr. Chen via telephone who ordered Plaintiff be transported to NJSP for examination and treatment. (*Id.*)

7

Defendants Toure and Chen argue these allegations do not amount to deliberate indifference. (ECF No. 44-1 at 6-7.)

The Court disagrees. Accepting the allegations of the Complaint as true, Plaintiff was suffering from a bleeding laceration on his head; was having difficulty breathing; and was unable to walk or use his foot. Despite these ailments of which they were aware, Defendants Toure and Chen did not take any action or provide any medical treatment at that time. While the lack of action could reflect a decision about the proper course of treatment, such allegations could also show an intentional refusal to provide care, which would establish deliberate indifference. *See Monmouth Cty. Corr. Inst. Inmates*, 834 F.2d at 346. As a result, and drawing all inferences in favor of the Plaintiff, Defendants' Motion to Dismiss is denied.

With regards to Defendant Milroy, a nurse at NJSP, Plaintiff alleges she failed to provide him with any medical treatment despite his complaints to her he could not breathe; he believed his ribs were broken; he could not walk; and he was in great pain. (ECF No. 1 ¶ 23.) Defendant Milroy argues Plaintiff's allegations regarding her "falsified medical report" show he received medical care from her, and he is just dissatisfied with her conclusion. (ECF No. 44 at 7-8.) While Defendant Milroy is correct that mere disagreement with a course of treatment does not demonstrate deliberate indifference, the Court does not agree with her suggestion that merely because she saw Plaintiff at his cell and produced a report, she could not still have been deliberately indifferent. *See Rouse*, 182 F.3d at 197 (finding that deliberate indifference can be established "where [a] prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason") The allegations state Defendant Milroy knew about his bleeding, breathing difficulties and great pain, but did not provide treatment; if true, that is not "mere disagreement."

It may ultimately be shown Defendant Milroy did conduct an evaluation and, in her medical opinion, treatment was unnecessary; however, at this motion to dismiss stage, taking all of Plaintiff's allegations as true, the Court finds Plaintiff has sufficiently alleged serious medical needs to which Defendant Milroy was deliberately indifferent. Therefore, Defendant Milroy's Motion to Dismiss this claim is also denied.

### 3. Tort Claims Act

In the Complaint, Plaintiff asserts a state law claim for infliction of emotional distress. Both parties agree as employees of a public entity, the Medical Defendants are entitled to notice pursuant to the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:8-8, for this claim. Defendants argue the claim must be dismissed because Plaintiff failed to "allege that he filed the required notice at any time." (ECF No. 44 at 12.) However, Defendants are incorrect. In the Complaint, Plaintiff states that he "filed a timely Notice of Tort Claim and thus has preserved all of his state rights." (Compl. ¶ 38.) Therefore, Defendants' Motion is denied.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's § 1983 and NJCRA claims for denial of medical treatment under the Fourteenth Amendment. The Motion is **DENIED** on all other grounds. An appropriate order follows.

Dated: September 30, 2019

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
UNITED STATES DISTRICT JUDGE

9